By the Court.—Sedgwick, Ch. J.
The plaintiffs’ alleged cause of action is that they were induced, by fraudu *173 lent concealments and by false and fraudulent representations, on the part of defendants, to buy from them certain promissory notes to the amount of about $7,000. The alleged concealments and representations concerned the pecuniary responsibility of the makers of the notes, and also facts which it is argued for plaintiffs, the defendants affirmed existed, and the existence of which they represented to be their reason for offering the notes for sale.
It is a necessary part of such a cause of action to show that the plaintiffs, relied upon the statements, or were induced by them to part with the money. Perhaps this can be proved circumstantially or by presumption from the nature of the transaction. In the present case, one of the plaintiffs who acted for both, specifically stated upon what part of the alleged representations he relied. His testimony was so explicit and of such a form that the jury would not have been at liberty to find that he relied upon the other parts of the representation or upon the existence of anything that it was alleged the defendants fraudulently concealed.
The plaintiffs had procured from the makers of the notes a statement as to their property and liabilities. The broker for defendants who had presented to plaintiffs the notes for sale, had said to plaintiffs that the reason the defendants wanted to sell the notes was, “ that they had a large amount of merchandise on orders waiting delivery to the makers of the notes, and that they were unwilling to deliver the goods until they parted with the paper.” The plaintiff, who testified on the trial, was not satisfied with this, but sent his clerk to the defendants’ store. This clerk saw a clerk of defendants, and had a conversation with him, in presence, as plaintiffs’ clerk testified, of one of the defendants. Plaintiffs’ clerk had been told to go to defendants’ store and ask one of them about the paper in question. The conversation was as follows: Plaintiffs’ clerk said, “Good morning, Mr. Eiley. I have called to see if you can give Mr. Gatlin any information about Freneau & Go.” After a slight pause, Mr. Eiley replied, *174 “We have no information about P. L. Freneau & Oo. that M. Catlin cannot get from the mercantile agencies.” After another slight pause, plaintiffs’ clerk said, “I presume Mr. Catlin wants to know in regard to paper, as I saw Mr. Shaw (who was defendants’ broker) in there just before I came away—whether for himself or the bank, I do not know. You have no statement from them ?” After ' another slight pause, Mr. Riley replied, “ No, we sell them freely, and have several thousand dollars ready to deliver them now.” After another slight pause, the clerk of plaintiffs said, “ Good morning. I am sorry to trouble you. I thought you could have told me more.” This conversation was repeated to the plaintiffs. The next day the plaintiff who testified, saw the broker of the defendants, and said he did not like the statement of the makers of the notes, but that he thought they would pull through that season, as defendants were going to deliver the goods, and the delivery would guarantee the payment of the notes. He "testified that that reason operated upon his mind in taking the notes; that is, that they had the goods ready and would deliver the goods. Finally, as the exact description of the operation of his mind, he testified, “The reason that actuated me was the fact that the defendants were going on to deliver these new goods through the season, beginning with this particular purchase, and if they delivered this bill of $8,000 or $10,000, they would probably deliver another one.” The substance of this consisted of a conjecture of what the defendants would do, in the future, in their dealings with the makers of the notes. The defendants or their broker had not referred, in any way, to future dealings. The only fact that they or their broker had "stated, which might be thought to be the starting point of this conjecture, was that they had sold to Freneau & Co. freely, and had on hand, for delivery to them, a large amount of goods, or several thousand dollars’ worth of goods. It was not proved that the defendants had not sold goods to Freneau & Co. freely, in consideration of the vague meaning of such a term. Nor *175 was it shown to be untrue that the defendants had on hand, ready for delivery, a large amount of goods, or several thousand dollars’ worth of goods, unless it could be shown that the defendants intended that the words used on this subject should be understood in their strict sense, that is, ready fox: delivery forthwith, the defendants having definitely determined to deliver forthwith. But the plaintiffs knew there was some question on this point, for they had been told that the goods were not to be delivered, unless the notes were sold. They did not inform the defendants that they desired information, with a regard to the plaintiffs having been offered notes that belonged to the defendants. The plaintiffs’ clerk said merely that he presumed the plaintiffs’ inquiry related to some paper of Freneau & Co., generally, because he had seen the broker in plaintiffs’ store, and the answers he received must be constraed as given by a pei’son not appxised of the expediency or duty of being exact. There was no statement, at any time, that the goods in question were of the value of $7,000 and more, as the plaintiffs assumed, and in fact there was on hand, ready for delivery, so far as the bargaining between the parties went, goods to the amount of $1,800.
I think it is apparent that the clerk of defendants who talked with plaintiffs’ clerk, declined, substantially, to make statements upon which plaintiffs shoxdd act, for the latter were informed that the defendants knew nothing which the plaintiffs could not learn from the mercantile agencies. They, so far as the testimony shows, omitted to obtain information from the agencies, and should not now hold the defendants for fraud for a vague and casual remark made subject to the direction to get information elsewhere.
Judgment affirmed, with costs. •
Freedman, J.,' concurred.